Calmelet v. Sichl.

ALEXANDER CALMELET, APPELLANT, V. JACOB SICHL, APPELLEE.

FILED MAY 19, 1896.    No. 6574.

1. **Party Walls:** RIGHT OF ONE PARTY TO INCREASE HEIGHT. An agreement for the construction of a wall in common by joint property owners to the height of three stories on the land of one does not justify the assumption that the other party may, of his own motion, and for his own sole benefit, extend said wall upward still another story, irrespective of a therefrom threatened easement ripening, or of injury likely to result to the property adjacent.

2. **Injunction:** PARTY WALL. The adjacent property owner, whose rights and estate are threatened by the proposed erection about to be made by the other, as above indicated, is entitled to the protection afforded by an injunction.

APPEAL from the district court of Otoe county. Heard below before CHAPMAN, J.

The facts and issues are stated by the commissioner.

*Edwin F. Warren*, for appellant:

The defendant used the wall, to the height of three stories, for about twenty years. If there was no special contract between the owners, this would give him the right to continue its use; but the extent and mode of user define the right. That right, as so defined, was the right to use the wall for three stories only. The right cannot be changed or enlarged. (*Ballard v. Dyson*, 1 Taunt. [Eng.], 278; *Atwater v. Bodfish*, 11 Gray [Mass.], 152; *Holsman v. Boiling Spring Bleaching Co.*, 1 McCar. [N. J.], 346; *Burnham v. Kempton*, 44 N. H., 95; *Richardson v. Pond*, 15 Gray [Mass.], 390; *Clayton v. Corby*, 5 Ad. & El., n. s. [Eng.], 422; *Jones v. Percival*, 5 Pick. [Mass.], 485; *Brice v. Randall*, 7 Gill & J. [Md.], 349; *Holmes v. Seeley*, 19 Wend. [N. Y.], 507; *City of Hartford v. Hartford County*, 49 Conn., 554; *Carlisle v. Cooper*, 19 N. J. Eq., 256; *Horner v. Stilwell*, 35 N. J. Law, 307; *Hazard v. Robinson*, 3 Mason [U. S.], 272; *Manier v. Meyers*, 4 B. Mon. [Ky.], 514; *Davidson v. Fowler*, 1 Root [Conn.], 358; *Charles River Bridge v. Warren Bridge*, 7 Pick. [Mass.], 449; *Wright v. Moore*, 38 Ala., 593; *Atkins v. Bordman*, 20 Pick. [Mass.], 291; *Postlewaite v. Payne*, 8 Ind., 104; *Jones v. Tapling*, 11 C. B., n. s. [Eng.], 283; *Wood v. Cooper Miners Co.*, 14 C. B. [Eng.], 428; *Sharpe v. Hancock*, 7 Man. & G. [Eng.], 354; *St. John v. Sweeney*, 59 How. Pr. [N. Y.], 175; *Milne's Appeal*, 81 Pa. St., 54; *Sullivan v. Graffort*, 35 Ia., 531; *Price v. McConnell*, 27 Ill., 255.)

The height of the wall could not be increased with safety or without injury to plaintiff. Conceding it to be a party wall, defendant had, therefore, no right to increase its height. (*Brooks v. Curtis*, 50 N. Y., 639; *Matts v. Hawkins*, 5 Taunt. [Eng.], 20; *Price v. McConnell*, 27 Ill.,

255; *Vollmer's Appeal*, 61 Pa. St., 118; *Ogden v. Jones*, 2 Bosw. [N. Y.], 685.)

Plaintiff is entitled to an order requiring defendant to take down the wall. (*Earl v. De Hart*, 12 N. J. Eq., 286; *East India Co. v. Vincent*, 2 Atk. [Eng.], 83; *Carlisle v. Cooper*, 21 N. J. Eq., 581.)

*John C. Watson, contra:*

A party wall may be created by user as such for the prescriptive period, for from such user a contract between the parties is presumed, in the absence of evidence that the user was presumptive only. (*Brown v. Werner*, 40 Md., 15; *McLaughlin v. Cecconi*, 5 N. E. Rep. [Mass.], 261; *Schile v. Brokhahus*, 80 N. Y., 614; *Dowling v. Hennings*, 20 Md., 179.)

Either of the owners of a party wall may increase its height when it can be done without injury to the adjoining building, and the wall is sufficiently strengthened to safely bear the additions. (*Brooks v. Curtis*, 50 N. Y., 639; *Andrae v. Haseltine*, 17 N. W. Rep. [Wis.], 18; *Dauenhauer v. Devine*, 51 Tex., 480; *Musgrave v. Sherwood*, 54 How. Pr. [N. Y.], 338.)

When the law and the facts permit either owner to increase the height of the party wall, he cannot be restrained from so doing by injunction. (*Quinn v. Morse*, 130 Mass., 317; *McLaughlin v. Cecconi*, 5 N. E. Rep. [Mass.], 261.)

Reference was also made to the following cases: *Miller v. Brown*, 33 O. St., 547; *Western Bank's Appeal*, 102 Pa. St., 171; *Henry v. Koch*, 80 Ky., 391; *Roger v. Sinsheiner*, 50 N. Y., 646; *Orman v. Day*, 5 Fla., 392; *Montgomery v. Masonic Hall*, 70 Ga., 38; *Rankin v. Charless*, 19 Mo., 490.

RYAN, C.

Plaintiff is the owner of a parcel of ground in Nebraska City having a north frontage on Main street of twenty-two feet, from whence said parcel extends south-

ward sixty feet. The land of defendant is contiguous to the west and south sides of this sixty-foot tract. Originally a remote grantor, through whom plaintiff derived title, built a one-story building on the west side of the tract above described as being owned by the plaintiff. The west wall of this building was entirely within and contiguous to the west line of said tract. Subsequently, in 1868, the defendant's grantor, who owned the land that was along the west and south sides of said parcel now owned by the plaintiff, but which at that time was owned by Marks Bros., remote grantors of the plaintiff, made use of the west wall along plaintiff's present property in the construction of the Watson House to the height of three stories. Still later, plaintiff having acquired his present parcel of land, replaced the one-story building thereon with another building two stories in height, for this purpose making use of the wall which had constituted the west side of his one-story building, and the required portion of this wall extended upward by defendant to make the Watson House three stories high. This change from a one to a two-story building necessitated the closing with brick of eight windows in the prolonged upward wall of the Watson House. As the owner of the Watson House refused to pay for, or even to contribute to the expense of, closing these windows, plaintiff was compelled to pay the entire amount. There seems, however, to have been no objection interposed to this closing of these openings in the wall other than would naturally be expected by reason of the inconvenience caused. There was certainly no attempt to assert adverse conflicting rights, or as between Mr. Lindsay, the defendant's grantor, and Marks Bros., who then owned plaintiff's present parcel of land, there does not appear from the evidence to have been any written contract under which the three-story wall of the Watson House was built, at least no one attempts to give the contents of such a contract or account for its whereabouts, nor even to say that such a writing was ever seen

or in existence.   In 1891 the defendant was desirous of
extending upward the walls of the Watson House to the
height of an additional story, and was carrying his de-
sign into execution, when the plaintiff procured an in-
junction by which the . completion of the work was
stayed.   It is claimed by plaintiff that before the com-
mencement of this work he caused to be served upon the
defendant a written notice to desist, but as no one testi-
fied to this service, and the defendant denied it, we must
assume that it was never given.   After hearing on a mo-
tion to dissolve the injunction said motion was sustained,
and of this fact the defendant, having obtained the first
knowledge, pushed his wall to completion before any
further steps could be taken by plaintiff to prevent this
being done.   This was on June 13, 1891.   On the 10th
day of January, 1893, there was had a trial to the court,
and on June 19, following, there was entered a decree
dismissing plaintiff's petition, because, as the court
found, it contained no equity.   From the dismissal of his
action and the taxation of costs against him the plaintiff
appeals.

The petition recited plaintiff's title and all the above
described facts, which, as he claimed, entitled him to
prevent the placing of a fourth story upon the wall of
which his west side constituted the first story.   There
were averments of the insufficient thickness of the wall
already in existence to sustain another story, but these
we do not feel called upon to describe or discuss at great
length.   The answer contained a general denial, fol-
lowed by these averments: "Second—The said defend-
ant   *   *   *   alleges that this defendant and his grant-
ors have for twenty years last past been in open, noto-
rious, peaceable, exclusive, and adverse possession of
the property known as the Barnum House, or Watson
Hotel, claiming the same as owners against the plaintiff
and his grantors and all persons whomsoever.   Third—
The said defendant   *   *   *   further   *   *   *   alleges
that during the spring of 1868 this defendant's grantor,

Lindsay, for a full and valuable consideration, and in pursuance of a written agreement between Marks Bros. and said Lindsay, became a part owner of the division wall between this defendant and said plaintiff, and under and in pursuance of said agreement re-enforced and strengthened the foundation of said wall and entered at that time into the undisputed use and possession thereof, building the same two stories higher and putting windows in the said wall for the use of his hotel building on said premises, which said Lindsay was at that time enlarging and rebuilding; that the defendant is informed and believes that by and under the terms of said agreement said Lindsay became the owner of one undivided half of said wall, but that this defendant is unable to state the terms and conditions of said agreement, the same never having come into defendant's possession; that said Marks and Lindsay are both dead and defendant knows of no one by whom he can establish the contents of said agreement; but this defendant then alleges that his grantor alleges that his grantor, Lindsay, entered into possession of said wall as a joint owner of the same in the year 1868, and ever since, until he sold said premises to said defendant, used and occupied the same as the division and party wall between plaintiff and defendant, and that plaintiff has so used and occupied this said wall ever since his purchase of said premises from Lindsay, purchasing and paying for the same, and that this defendant is the owner of an undivided one-half of said wall entitled to all the rights and privileges of an equal owner of a party or division wall. Wherefore defendant prays that this action may be dismissed and that plaintiff recover nothing by his writ." There was a reply in which was denied each of the above copied averments of the answer.

The issues presented by the general denial contained in the answer have already been sufficiently covered for general purposes by the statement of the facts hereinbefore made. There are questions of law incidental to

these of fact which, however, can scarcely be considered profitably, independently of other fact propositions stated in the answer. From the facts already stated it is evident that the averments that the defendant and his grantors have for more than twenty years been in the undisputed adverse possession of the Watson House have no bearing upon the right to increase the height of the wall having its foundation upon the plaintiff's land. The fact that this wall was built to a height of three stories in pursuance of a written agreement founded upon a sufficient valuable consideration, a part of which was the strengthening and re-enforcement of the foundation, would be very pertinent if the plaintiff was now seeking to procure the removal of that particular portion of the wall. (*Barr v. Lamaster*, 48 Neb., 114.) By the averments of the answer, however, this agreement was limited to the erection of the wall to the height of three stories; as to the proposed fourth story, the rights of the parties were as though no such written agreement had ever been made. The remainder of the answer was devoted to allegations showing a tenancy in common of the already constructed wall as between the plaintiff and the defendant. If by a liberal construction the averments as to possession of the Watson House for more than twenty years should be construed as a claim of title by virtue of the statute of limitations, the operation of this statute could not be possible as between tenants in common, for the rule as between tenants in possession is as stated in section 296, Buswell on Limitations and Adverse Possession, that each of them has the entire possession as well of every part as of the whole, and the seisin and possession of one being *prima facie* the seisin and possession of the other, or others, one cannot be disseised by another without an actual ouster. This rule was applied by this court in *Smith v. Hitchcock*, 38 Neb., 104. The averments that in 1868 the defendant's grantor became a joint owner of the wall and that said ownership has ever since continued in the plaintiff, were limited to the wall three stories in height.

From the foregoing review of the answer it is clear that the defendant claimed and could assert no right except such as is necessarily implied by law from his interest in the three-story wall. As to the fourth story, this statute of limitations, as we have seen, is unavailable, and equally foreign is the plea that the defendant is the joint owner or tenant in common of the wall already constructed. The arrangement under which the wall was constructed, if, as alleged in the answer, it was under a written agreement, gave each party in the building of the other a cross-easement in respect to which he was entitled to protection. (*Barr v. Lamaster, supra.*) That courts have no power, however, to enlarge contract rights of parties requires no citation of authority to establish. It is, moreover, very clear that an easement for one purpose established by mere user cannot, by legal intendment, be extended to another purpose. (*Ballard v. Dyson*, 1 Taunt. [Eng.], 279; *Atwater v. Bodfish*, 11 Gray [Mass.], 150; *Holsman v. Boiling Spring Bleaching Co.*, 1 McCar. [N. J.], 335; *Burnham v. Kempton*, 44 N. H., 78; *Richardson v. Pond*, 15 Gray [Mass.], 387; *Holmes v. Drew*, 7 Pick. [Mass.], 140; *Wright v. Moore*, 38 Ala., 593; *Atkins v. Bordman*, 20 Pick. [Mass.], 291; *Price v. McConnell*, 27 Ill., 255.) Each of these cases was decided upon the assumption of a grant, either express or implied, and from them the principle deducible which is applicable to the case at bar is that the right to erect a fourth story cannot be implied from plaintiff's acquiescence in the erection upon the ground of the first, second, or third stories. Another application of the same principle is that the erection of the first three stories having been jointly by agreement between the parties, whereby, as defendant alleged, they were constituted joint owners of the wall to the height of three stories, this did not justify one of these parties in putting up the fourth story in his own right, for his own benefit, and in open hostility to the wishes of the other joint partners. (*Omaha & R. V. R. Co. v. Rickards*, 38 Neb., 847; *Gatling v. Lane*, 17 Neb., 80; *Haywood v.*

*Thomas*, 17 Neb., 237.) In any view which can be taken of this case the defendant, upon the facts pleaded in his answer, could not justify his right to build the fourth story above the three stories already erected on plaintiff's lot. The attempt to do this was an invasion of the plaintiff's legal rights, and if consummated would constitute a continuing trespass upon his property, which eventually would ripen into an easement, which consideration alone was deemed a sufficient ground for an injunction in *McCloskey v. Doherty*, 30 S. W. Rep. [Ky.], 649; citing *Poirier v. Fetter*, 20 Kan., 47; *Musselman v. Marquis*, 1 Bush [Ky.], 463; *Peak v. Hayden*, 3 Bush [Ky.], 125.

In *Mendenhall v. Harrisburgh Water-Power Co.*, 39 Pac. Rep., 399, the supreme court of Oregon held that an injunction would lie to prevent the widening of a ditch for a water-course through plaintiff's land and the erection of a dam which would destroy plaintiff's ford, defendant having no legal right to either. The ground upon which this seems to have been placed was that from the nature of the excavation an injury to plaintiff's easement was likely to result. In support of the conclusion reached there were cited *Smith v. Gardner*, 12 Ore., 221; *Chicago, B. & Q. R. Co. v. Porter*, 72 Ia., 426. In the case at bar it was shown that the original foundation wall had been of the thickness of fifteen inches; that this had been re-enforced afterward by a wall twelve inches in thickness, and that from the top of the re-enforced wall the prolongation to the height of two stories was twelve inches in thickness, and from thence upward, inclusive of the fourth story, the wall is of the thickness of nine inches, and, by much evidence adduced by plaintiff, it was shown that from the fourth story being erected upon its narrow foundation as described, there are grounds for apprehending serious injuries to the property of the plaintiff. If the evidence is sufficient to sustain this contention, there can be no doubt that plaintiff is entitled to an injunction against the erection and continuance of the fourth story of the wall in question which threatens the

37

safe enjoyment of his property. The judgment of the district court is reversed and this cause is remanded to said district court for further proceedings.

REVERSED AND REMANDED.