# LAW AND CHANCERY COURT OF THE CITY OF NORFOLK

Bivens

v.

Hyatt, etc.

June 20, 1969

Case No. (Law) 5154

By JUDGE EDWARD L. RYAN, JR.

This action bottomed on negligence was instituted on October 21, 1968, and answered on November 5, 1968. On November 25, 1968, defendant filed the usual motion for production of documentary and other evidence that plaintiff would marshal in support of his alleged damages. An order requiring such production was entered by the court on November 26, 1968. Later, counsel agreed orally to the taking of discovery depositions.

On May 26, 1969, the defendant filed a motion to dismiss for plaintiff's failure to appear and permit defendant to discover him orally. (Rules of Court (Va.) 4:12. Refusal to Make Discovery: Consequences). By agreement, the dates scheduled for the depositions were April 15, 1969, and May 22, 1969. The trial date of May 13, 1969, had been continued to a firm trial date June 18, 1969, by agreement of counsel. Defendant agreed to the continuance on representations of counsel that plaintiff was ill.

Defendant's motion to dismiss under the penalty rules came on for hearing on June 6, 1969, at which time the defendant represented that, despite an intense investigation, no hospital in "the entire Tidewater area" has any record of plaintiff's hospitalization or treatment for any illness. Counsel for plaintiff represented that his client was "dreadfully ill" and "had almost begun

to vegetate," but stated he was unable to produce any oral or documentary evidence that illness had prevented his client from presenting himself for oral discovery. At this point, counsel for defendant, with understandable vigor, asserted that the court should sustain the motion to dismiss *eo instante*.

In reply thereto, counsel for plaintiff represented that his client was penurious and could resort only to clinical, hospital treatment and that such clinics keep "scanty records" or "no records at all." In short, through no fault on his part or that of his client, they were unable to produce such evidence. Over the objection of the defendant, the court did not rule on the motion to dismiss, but granted plaintiff's counsel five days' leave within which to produce evidence in explanation of his client's conduct, but with the proviso that if there was a failure to so produce, then the action would be dismissed and ended. As the court recalls, the hearing was concluded just prior to the noon hour of June 6, 1969.

At approximately 3:15 p.m. on Friday, June 6, 1969, counsel for plaintiff presented to the court for entry an order of voluntary nonsuit, stating that he could not produce the necessary evidence within the time allotted, but believed that he could do so upon the institution of a second action and the additional time that such delay would afford him. The order of nonsuit was presented to the court without notice to defendant's counsel, whereupon the court advised said counsel by telephone of the development, granting him opportunity to be heard in opposition. Counsel asked for a short delay "to check the statute" and subsequently returned the telephone call stating that from his cursory "check" he could find no ground for opposition. The court then entered the order of nonsuit on June 6, 1969, at approximately 4:00 p.m.

On Monday, June 9, 1969, the defendant filed a motion that asked the court to set aside and vacate the order of nonsuit entered on June 6, 1969, and, for grounds, set out the following:

> 1. That the Order of Nonsuit granted the plaintiff is *prejudicial* to the defendant, as it makes *ineffectual* the Motion to Dismiss heretofore filed by the defendant *based upon a right* which arose during the pendency of the action.

2. That the Order of Nonsuit *frustrates* the verbal *Order of the Court* made June 6, 1969, prior to the entry of the Order of Nonsuit, which said verbal Order required the plaintiff to produce evidence and *show cause* why defendant's Motion to Dismiss should not be sustained. (Italics added.)

Any discussion of the issue must begin with a consideration of the provisions of the nonsuit statute (Code Section 8-220) which seem to give plaintiff an unfettered right to suffer a voluntary nonsuit, subject to certain very limited exceptions. While couched in negative language ("A party shall not be allowed to suffer a nonsuit"), if the statute is construed from a positive approach or rendering, the plaintiff may freely suffer nonsuit, if the following have *not* accrued: (1) if the jury has *not* retired from the bar, (2) if the *action* has *not* been submitted to the court for decision, (3) if a motion to strike the evidence has *not* been sustained by the court.

Any consideration of 1 and 3, above, obviously is not involved and requires no discussion. But when defendant presented his motion to dismiss and his full argument thereon, had the "action" been, at that point, submitted to the court for decision?

A determination of the meaning of the word "action" should be dispositive of No. 2, above. The legislature must have intended the use of the word "action" in its legally and classically accepted meaning, that is, the entire claim, defense and *all* of the proceedings.

In a quite common sense, action includes *all* the formal proceedings in a court of justice attendant upon the *demand of a right* made by one person of another in such court, including *an adjudication* upon *the right, and its enforcement or denial by the court.* (Italics added.) *Black's Law Dictionary*, third ed., p. 42.

The defendant in his motion to dismiss did not submit the *action* to the court for decision (on the merits) but merely presented the court a preliminary or interim pleading that could have ended the case, but it did not call upon the court to decide the *action* on the merits or any part thereof.

> *Motion.* An occasional application to a court by the parties or their counsel, *in order to obtain some rule or order*, which becomes necessary either in the *progress* of a cause, or *summarily* and *wholly* unconnected with plenary proceedings. (Italics added.) *Black's Law Dictionary*, third ed., p. 1208.

(N.B. "Plenary" has been defined as "Full; entire; complete; unabridged." *Ibid.*, p. 1369)

Defendant says that the entry of the order of nonsuit was prejudicial and in support of his position cites *Kemper* v. *Calhoun*, 111 Va. 428 (1910). This matter involved the establishment of a public road and at a point in the proceedings the petitioners moved the court for a dismissal which was granted. In affirming, the Supreme Court cited with approval the following:

> While a plaintiff may dismiss any claim where such dismissal will not *prejudically* affect the interests of the defendant, he will not be permitted to dismiss, to discontinue, or to take a non-nuit [sic], when by so doing *he will obtain an advantage* and the defendant will be *prejudiced and oppressed*, or *deprived of any just defense.* Nevertheless, the injury which would be thus occasioned to defendant must be of a character that deprives him of some *substantive right* concerning his defenses, *not available in a second suit*, or that may be endangered by the dismissal, and not the mere ordinary inconveniences of double litigation, which in the eye of the law would be compensated by costs. (Italics added.)

This principle established by *Kemper* is cited with approval in *Gemmel* v. *Svea Fire Ins. Co.*, 166 Va. 95 (1936); *Jenkins* v. *Faulkner*, 174 Va. 43 (1939); and *City of Norfolk* v. *County of Norfolk*, 194 Va. 716 (1953).

Other than setting out the stated general principle of law, *Kemper* offers no instructive aid by way of illustration, construction or definition of the language and principles italicized in the quotation therefrom.

*Gemmel* is of interest, but of no assistance in this case. In that case judgment was for the *defendant* in the Civil Justice Court of Richmond and plaintiff appealed to the Law and Equity Court. At trial in the latter court plaintiff suffered a nonsuit and shortly thereafter instituted a second action. Thereupon defendant filed three special pleas, and, in effect, also asserted that it had been prejudicially deprived of the judgment it received in the Civil Justice Court. The Law and Equity Court rendered judgment in favor of the plaintiff on the second trial. The Court of Appeals affirmed, holding that an appeal to a court of record results in a trial *de novo* and the court acts as one exercising original jurisdiction. Unfortunately, for our purposes, the Court of Appeals does not touch on the supposed prejudice, inferentially asserted by defendant.

*Jenkins* is of no assistance whatsoever merely citing *Kemper* without any quotation therefrom. The only issue answered was that it was proper to permit the plaintiff to pay the overlooked writ tax during the course of the actual trial.

*City of Norfolk* is the celebrated annexation suit instituted against the County of Norfolk in 1949. The County attacked by way of demurrer the sufficiency of the ordinance adopted by the City, which was later over-ruled. An earlier annexation suit that had been instituted by the City of South Norfolk was first heard and the court granted it annexation of parts of the county that had been sought by the City of Norfolk. Thereupon, the City of Norfolk repealed the first ordinance and adopted a second ordinance and commenced another proceeding for the annexation of the territory it still desired. Thus, the City of Norfolk had two annexation cases pending against Norfolk County in the Circuit Court of Norfolk County (which will be referred to as the 1949 and 1951 cases).

For certain very intricate reasons (not necessary to be recited here) Norfolk sought to suffer a nonsuit in the 1949 case and proceed with trial of the 1951 case. This was denied and the 1949 case was decided adversely to the City. On appeal the City assigned several errors of the trial court, but the only one of interest here is "(2) Refusing to permit it to suffer a nonsuit." The Court of Appeals said:

In our view of the case, it is only necessary to consider the first two assignments of error, since we are of the opinion that the lower court erred in refusing to sustain the motion of the City of Norfolk to dismiss its 1949 case (the first assignment of error), and in denying the motion for a nonsuit.

The thrust of the County's position was then when the City repealed the first ordinance in order to abate the 1949 suit (after the successful prosecution of South Norfolk's case), and then proceed with its 1951 suit, the County would have been seriously disadvantaged, deprived of favorable and tactical developments, and thus, in a sense, prejudiced. Also alleged was that the tactic of the City was to secure the advantage of an enactment of the General Assembly that became law after the institution of the 1949 suit.

Following a studious review of the law of Virginia and other states and the law as generalized in many encyclopedias of law, the Court of Appeals concluded as follows:

Paraphrasing the language used in the foregoing Virginia cases, we think it may here fairly be said that it is difficult to see how the City of Norfolk can be justly charged with acting in bad faith. Its council, charged with the duty of protecting the interests of the City, was vested with the right to institute annexation proceedings in the exercise of their original discretion. If, after having commenced the first proceeding, it found that it could not be successfully prosecuted because a portion of the territory originally desired had been acquired by another city, and the allegations of its ordinance with respect to the necessity of acquiring such territory were no longer tenable, it then abandoned that proceeding and instituted a new one appropriate to the changed circumstances, it is not for us to say such action constituted bad faith. The 1951 proceeding was substituted for the 1949 proceeding, as a matter of necessity, because of circumstances beyond the control of the

City of Norfolk. It seems to us that it exercised the only option open to it under the circumstances.

The rights of the County of Norfolk are not necessarily prejudiced by a dismissal of the 1949 case. It is not deprived of any *just defense* or *substantive right* in *contesting* the annexation of its territory. *It* is not deprived of the benefit of the preparation it made of the *defense* of the 1949 proceeding. The mere inconvenience of double litigation, under the circumstances here, cannot be allowed to deprive the City of Norfolk of its right to abandon and dismiss its first action. (Italics added.)

Adverting to the specifics of defendant's motion, paragraph 1, they may be reduced to the distillate that the *prejudice* allegedly suffered was *based upon a right*, which the court must take to mean a *substantive* right.

As to prejudice, the court draws upon what it concluded in another law action pending in this court. *Cottrell, et al.* v. *West, et al.*, Law Docket No. 5016. In that case the issue before the court was as to whether default judgment should be granted defendant where the plaintiff filed to file a reply, as requested and demanded, to the "new matter" set up in the defendant's plea (Rule 3:11), on the ground that upon failure to answer, the "new matters" were "deemed to be admitted." When plaintiff moved for leave to file a late reply, months later, the defendant alleged that they were "taken by surprise and prejudiced." This court concluded as follows:

A ruling in favor of plaintiffs will, it is true, deprive the defendants of a speedy and abrupt end of the lawsuit, but the court concludes that this result would not be, in a legal sense, prejudicial to the defendants.

"Prejudice. . . 1. Chiefly legal. To injure or damage by some judgment or action; impair;

as to *prejudice* a good cause." *Webster's New Collegiate Dictionary*, p. 666.

"Prejudice. . . A person is 'prejudiced' in the legal sense, when a legal right is invaded by an act complained of or his pecuniary interest is directly affected by a decree or judgment." *Black's Law Dictionary*, 3rd ed., p. 1402.

Permitting plaintiffs to file their reply will take from defendants a tactical and technical advantage, but it will not prejudice their basic and good cause, or invade their legal rights, or affect their pecuniary interests *directly*. They will have their day in court to assert any and all of their *basic defenses* and their rights will be preserved. On the other hand a ruling adverse to the plaintiffs will place them squarely aboard the definitions set out above.

Upon motion to nonsuit *Kemper* (and *City of Norfolk v. County of Norfolk, supra*) does not permit a litigant to "obtain an advantage," but "advantage" means a "preference or priority" (*Black's Law Dictionary*, p. 65), which the court concludes did not follow the granting of the nonsuit order in this case.

*Kemper* bans nonsuit if the defendant is "deprived of any defense" or of any defense "not available in a second suit." Surely, defendant has not suffered any such injury in this case.

And, finally, defendant cannot be deprived, under *Kemper*, of any "substantive right." The court concludes that a "substantive right" is one granted by substantive law, disassociated entirely from procedural law.

The positive law of duties and *rights* is commonly called Substantive Law; procedure, considered in its relation to substantive law, is called Adjective Law. *Bouvier's Law Dictionary*, vol. 3, p. 3173. (Italics added.)

The court concludes that when defendant moved to dismiss under the penalty provisions of Rules of Court (Va.) 4:12, he was asserting a procedural right but no substantive right was involved that would fall within the ambit of the *Kemper* exception.

Paragraph No. 2 of defendant's motion to vacate the order of nonsuit proposes that said order "frustrates the verbal *order* of the Court. . . (which) *required* the plaintiff to produce evidence and *show cause* why defendant's Motion to Dismiss should not be sustained." (Italics added.)

*Black's Law Dictionary*, 3rd ed., p. 1298, defines "order" as follows:

> [In a General Sense] A mandate, precept; a command or direction authoritatively given; a rule or regulation. . .
>
> [In Practice] Every direction of a court or judge made or entered in writing, and not included in a judgment [is denominated as an order.]

At the hearing on June 6, 1969, the court merely *granted leave* to plaintiff to produce evidence within five days in explanation of his failure to appear at the times and places scheduled for the taking of his oral deposition. It was an act of judicial grace and was in no sense an "order" that "required" plaintiff to "show cause" for his failure to appear. It will be recalled the court commented that, under all the facts and circumstances, justice required that such leave be granted plaintiff.

An order may be presented overruling the motion to vacate, preserving unto defendant his exceptions.

As shown above, *Kemper* recognizes that there are "ordinary inconveniences of double litigation, which in the eyes of the law would be compensated by costs." The court rules that the defendant is entitled to such compensation and thus the order to be presented should make provision for payment of costs, expenses and attorney's fees by plaintiff. If counsel cannot agree as to the provisions for costs, then counsel should present their respective positions and the court will assume the duty of setting same. Proviso should also be made that the trial of any second action instituted will be stayed until such costs are paid, and a certified copy of such order filed in the jacket of the second suit.